Good morning, Your Honors. May it please the Court. My name is Debra Levine, and I represent the appellant, Carlos Asprilla, and he asks me to pronounce his name that way. All right. Then we'll go. It's Asprilla it is. Thank you. Well, this case is moving fast and furiously. As Your Honors see, there was a decision issued yesterday in the Marcelle King case, which is raises some similar issues, so I'd like to just briefly address that and the Baker case, which came down after I filed my opening brief. I did address it in my reply brief. This question of whether reasonable suspicion is required to search a probationer is one that I don't think has been decided, although Justice Graber, in her concurring opinion. Judge Graber. Judge Graber. There is no justice on the Ninth Circuit. Sorry. I'm too used to being a California lawyer. Judge Graber, in her concurring opinion in Baker, which she calls attention to yesterday in her concurring opinion in the King case, says that this issue has been decided in Motley v. Parks. I reread Motley v. Parks and I read the case of GAMI, which is cited for the proposition that unless there's intervening Supreme Court higher authority, the issue is decided and it can't be revisited. But I would just like to ask the question of Your Honors and of the Court whether the reasoning in Sampson v. California, the Supreme Court case, does in fact intervene. It's a decision that comes after Motley v. Parks, and the reasoning in the Sampson case, as very clearly articulated by Justice Thomas, is that parole and probation is very different. There is a continuum of rights that are diminished from the prisoner locked in his cell to the probationer who has not had sentence imposed on him. Mr. Esparilla received two days' credit for time served and was granted three years' probation. His sentence had not been imposed. It was suspended on his good behavior, his probation. So just so I understand your argument, it seems to me you're conceding that our Ninth Circuit precedent is squarely against you, but you're arguing that intervening authority undermines that? Well, this isn't what Judge Graber said in her concurring opinion. However, when reading Justice Thomas and reading the Motley opinion, which is the case that Judge Graber is citing, your opinion, the Ninth Circuit, Motley specifically says in 2005, our Supreme Court is going to decide this issue, which it does then decide in 2006. So the decision at Sampson that Justice Thomas pens is written after Motley v. Parse, and he spends a great deal of time discussing these distinctions between probation and parole. I'll leave it to Your Honors to determine whether you're bound, but I do think, and I will go on to discuss this issue of reasonable suspicion, I do think that it's a very important issue in this case. And that's because when you go to the end and you see the police conduct in essentially forcing entry into the home of Tashara White, you need to look at the totality of the circumstances to determine what justification there was for this conduct. And very importantly and factually in this case, there is very little support for the conclusion, for the reasonable suspicion that Carlos Esprilla has a firearm. And the language of the testimony that's in the record is very important because the officer himself who acted here, who got the information and acted based thereon, himself acknowledged it could have been merely a rumor. The informant told him on the telephone only that a person by the name of Carlos had a firearm. Well, curiously enough, the district court judge slightly changed the language from the testimony and said in her decision, Carlos is in possession of a gun, and that's what was the case. Or that was what was said by the informant. But didn't the informant also say his nickname was Cuban and one of the officers knew that Cuban was your client? Precisely the opposite. He said that the person whose name was Carlos was also known as Cuban. No one, no one, no officer, not Sergeant Manning, not Officer Manning. The tip also makes reference to this girlfriend and some vehicles, right? And so before they even make an approach of Mr. Esprilla, they make certain, they surveil and they corroborate certain things about the vehicles, and so it, before they even ask him to stop, and he, you know, I mean, things sort of go downhill from there, and it seems that you're really, you're focusing early on over whether they had reasonable suspicion that he lived there, and once that, or probable cause that he lived there, once that happens, then, you know, everything happens so fast, and you're, and they see a gun, and, you know, he gets a key out, and he goes in there, and certainly, he, you know, a key certainly indicates that somewhere you live. Well, they don't see a gun until the very end of the story when they tackle him and obviously take it from him. But they see him go, they try to stop him. He resists everything. They've already corroborated vehicles, you know, and... They've corroborated that... And someone knows him at that point. Pardon me? When they're, when they start to approach him, someone said that they know him, right? One of the officers says he does recognize him. I'm not arguing... He called him by name. I'm not arguing, Your Honor, that it's reasonable to conclude that the Carlos that the informant named was Carlos Esprillo. I'm not arguing that. What I'm arguing is that there's no reason to believe that this person has done anything in violation of the law. It's the tip about the gun that's completely unsubstantiated. And it's... Yes. Well, and with regard to the address, the Ingalls address, when they ran the registration on his vehicle, he had a 2345 Market Street address, and the officers never made any attempt to verify whether he was actually living at that address and just visiting his girlfriend at the Ingalls address, which might explain the key that he comes... On occasion, he has a key to the apartment, but he doesn't reside there. That's exactly right, Your Honor. And under the Howard test, there probably isn't sufficient evidence that he actually resided at the Ingalls address, right? I think that's crystal clear. That's your argument? Absolutely. That there isn't reasonable suspicion that he was breaking the law, that he had a firearm. And number two, that there's absolutely no probable cause, a higher standard, to believe that this is his residence. That's essential. If you look at the facts in Howard, they're very detailed as to the probation officers' investigation as to where Mr. Howard lived. Ms. Levine. Yes. Before you finish, I'm stuck with a point that you made earlier that Judge Callahan made. The King case is directly against you. I'm reading from yesterday's opinion. To the contrary, the plain import of defendant's probation condition, which is identical, King to the probation decision that we have here, allowing warrantless searches at any time, is that defendant, their King, here Esparilla, may be searched whether or not police suspect him of wrongdoing. Now, that being the case, under Miller v. Gammie, a three-judge panel of the Ninth Circuit cannot depart from the law stated by another three-judge panel before it. You say there's been intervening Supreme Court cases. Sampson's not intervening. It's intervening from Motley v. Parks, which is the case that the Court is relying on. But, Your Honor, I think there's multiple reasons why the question of reasonable suspicion is relevant here. Because when you get to the question of reasonable suspicion, it's exactly irrelevant under our decision filed yesterday. Now, tell me why we are not bound by that decision under Miller v. Gammie. Because in Miller v. Gammie, the Court said that the reasoning behind an intervening decision, and Sampson is intervening with very strong reasoning distinguishing between probationers and parolees. If we can distinguish the reasoning behind Sampson from the words of King, then we don't have to pay attention to King. But King, yesterday's decision, is essentially the same as Baker. And I'm suggesting, as Judge Graber said, there was a mistake. But I think the mistake has been the concurring opinion, single judge, not three judges. I understand, Your Honor. Thank you. Your time has expired. All right. Thank you. Good morning. Good morning. May it please the Court. Brian Lewis on behalf of the United States. The district court properly denied the defendant's motion to suppress the loaded gun and the ammunition found in his possession on November 24th, 2009.  the ammunition found in his possession on November 24th, 2009. The evidence found that the officers executed a valid probation search of the defendant's person and his residence pursuant to the defendant's warrantless search condition. What specific facts support your position that the officers had probable cause to believe Esprilla lived at 1217 Ingalls' address? Your Honor, Howard sets forth three central factors, and I believe all of those are met. First and foremost, and the strongest piece, is the key that was found in his possession that he used to open the door on November 24th as officers tried to execute the probation search. In Howard, of course, the officers in that case affirmatively knew that the defendant was not in possession of a key. Second, the officers' observations on November 13th and November 24th. The officers go out on their first attempt once they've located the area that they believe the tip indicates that Mr. Esprilla lives in, and they find him there driving a car registered to that exact address. On November 24th, they then find him in the residence. He lets in a guest and later exits the residence and then, of course, runs back. Then finally, the tip, which is a corroborated tip, the tip is specifically that Carlos well, I'll go over the tip and the parts that are corroborated. The tip is that Carlos, with the nickname of Cuban, is a black male, 22 years of age. He's a West Mob gang member. He lives with his girlfriend off of Ingalls in an apartment below a parking lot. The girlfriend owned a black Pontiac GTP, and Carlos owned a white Lexus, and Carlos had a gun. The portions of the tip that are corroborated are named Carlos, that he's a black male, and he's about 22 years of age. That's corroborated by the rap sheet that Sergeant Manning said that he reviewed, and the fact that he's a West Mob gang member is also corroborated. That's corroborated by Inspector Silver, who Sergeant Manning confers with before they begin their investigation. Surveillance shows that the apartment that they believe he lives in, 1217 Ingalls, is below a parking lot. There are pictures of the residence that make clear the unique circumstances. In fact, Sergeant Manning said that once he heard the description that there were an apartment below a parking lot off of Ingalls Street, he knew the exact block. Surveillance on November 13th confirms that. The first day that officers go out to look for Carlos Esprilla on November 13th, they find him there, driving a car registered to that exact address to a woman, further corroborating the tip that he lives with his girlfriend. And finally, while he's out, and they find him in the air about five or six blocks away on a street called Cashmere Street, he parks next to a white Lexus that's registered to him, to a Carlos Esprilla at 2345 Market Street in Oakland. And Alabama v. White teaches that if you corroborate part of the tip, then officers are allowed to reasonably infer that the more inculpatory parts, that he had a gun, that he lived at this residence, are true. And here, that all adds up to the tip being something the officers could reasonably rely on. The tip came from a known informant. It came over the phone, so it was not in person, but it was not an anonymous tip submitted on a sheet of paper. There was some interaction between the officer and his informant. And that added to the observations, and I think it's important here that the level of investigation that's done is first consistent with some of the cases cited by Howard. So it's consistent with Dally and with Harper that involve about three days of investigation. But I don't think the Court should be concerned with the length of time. What's important in the touchstone for whether or not probable cause, for whether or not someone lives there is the information that's found, not the level of investigation that's done. And here, they find Carlos Esprilla right there. And it's true. So is it pretty unusual to find a boyfriend at the girlfriend's apartment? I'm sorry, Your Honor. That's unusual, to find the boyfriend at the girlfriend's apartment? So Howard dealt specifically with the overnight guest, the possibility that a boyfriend might be there. Here, there are a few things I think that take it out of that context. And specifically, the tip is that he lived there, and they corroborate the tip. And so that adds to, doesn't I think supply all the probable cause, but it adds to the quantum that officers are allowed to consider. They also then see him in the area, and importantly, the district court found this most important. And they find him with a key. And his use of the key is only one time, but that's also consistent with all the cases that Howard cites, in Daly and Conway and Watts and Harper. There was just, Harper was used to the key once or twice. Otherwise, it's just once. In fact, in Daly, it's very similar. He uses the key, and the officers recognize that once. When he comes up the next time, they arrest him. Not so dissimilar from this set of circumstances. Judge Bennett, you raised a question about what Ms. Levine's argument might be, and that's specifically that they didn't take a look at the probation address. And that's true. They did not. Sergeant Manning testified that he started looking where he thought Carlos Esparilla would be. And I think that makes perfect sense. I think that fits squarely within what's anticipated by Howard and with what officers ought to do. And I also think, however, there's this notion, or one might glean from Howard, that officers need to start looking at the probation address in order to prove that he doesn't live there, to show that he does live at the suspected address. The district court pointed out in its opinion that this Court has already recognized that individuals can have multiple residences for the purposes of the Fourth Amendment. And so it cannot be that the officers had to disprove that he didn't live at the probation address in order to prove that he did live at 1217 Ingalls, because, of course, he could live at both. And so while Howard talks about it, I think that's because in that context, in Howard, they had a tip that the defendant was residing at an address, I think on Bonanza Street, but they didn't find him there. And so in a situation where you're not finding the person where the suspected address, it makes sense to say, well, did you go look where he told you he was? But that's just not the set of facts that we have here. Let me ask you, if the search of the 1217 Ingalls apartment was justified by reasonable suspicion, does the panel need to reach the question of whether exigent circumstances independently justified the search of the apartment? No, Your Honor. Both grounds that the district court found independently support the search and the rest in this case. Mr. Lewis, can I ask you about the decision by the Ninth Circuit in King yesterday and the suspicionless search issue? I don't see where you raised that. I realize you claim you raised it, but I read the part of the record, page 257, where you claim you reserved it, and I don't think so. And then I went back and actually read the brief that you filed in the district court opposing the suppression motion. You never once raised the suspicionless search issue. So how is it that that issue has been preserved by the government here? And if it hasn't been preserved, how is it that we could reach it? Your Honor, this court reviews the district court's findings de novo, and you can affirm on any ground supported by the record. I reread the transcript, and I think there's a more articulate preservation of the right a few pages later on 260. But it is true down below that I argue that reasonable suspicion existed in this case, and that was my focus. But I believe Your Honors can affirm based on the suspicionless, based on King and Baker, notwithstanding my inartful attempt to preserve the issue. And to be clear ---- Well, you say your attempt to preserve it was inartful. Where did you ever actually raise it in the district court? You didn't raise it in the hearing, and you didn't raise it in your briefing. So how is it that you raised the issue? Your Honor, I did not raise it in the briefing. Are you willing to concede you didn't raise the issue below? I was about to make that concession in this way. But I do believe that there is a reasonable suspicion in this case. And I'm happy to walk through the grounds I believe support that reasonable suspicion. So is what you're saying, even if we didn't agree with that, we can affirm the district court under any legal theory that supports it. Is that what you're saying because it's de novo? That's your Honor. All right. I think your time has expired unless any panel members have additional questions. Does not appear they do. Then I'll ask your Honors to affirm. Thank you. Did any panel members have any additional questions of the appellant's counsel? All right. Your time has also expired. Thank you. Thank you both for your argument.
judges: Bennett, Callahan, Bea